THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:12-cv-00281-MR-DLH

| | |
|---|---|
| THE WELLNESS GROUP, LLC, ) ) Plaintiff, ) ) vs. ) ) KING BIO, INC., DR. FRANK J. ) KING, JR., SUZIE R. KING, DAVID ) GERHARDT, and MICHAEL D. ) WHITTAKER, ) ) Defendants. ) _____ ) | **MEMORANDUM OF DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Defendants' Motions for Summary Judgment [Docs. 69, 74, 77, 79, 81].

**I.     PROCEDURAL BACKGROUND**

The Plaintiff The Wellness Group, LLC (TWG) initiated this action on September 10, 2012 against the Defendant King Bio, Inc. (King Bio) and its corporate officers for claims arising out of the alleged breach of the parties Sales Management Agreement (SMA).  In its Amended Complaint, TWG seeks a declaratory judgment as to the amount of commissions due and owing to the Plaintiff under the SMA (Count I), as well as a declaratory judgment that the Non-Competition Agreement executed by TWG in

connection with the SMA is invalid and unenforceable (Count VII). [Doc. 45]. In the remaining counts of the Amended Complaint, TWG asserts claims for: breach of contract (Count II); unjust enrichment (Count III); breach of the covenant of good faith and fair dealing (Count IV); tortious interference with business relations (Count V); violations of N.C. Gen. Stat. § 75.1, *et seq.* (Count VI); civil conspiracy (Count IX); fraud (Count XI). TWG further seeks an accounting under the SMA (Count X) and seeks to hold the individual officers liable for the alleged wrongful acts of the corporate defendant by piercing the corporate veil (Count XII). In addition to seeking compensatory damages, TWG seeks punitive damages (Count VIII).

The Defendants now move for the entry of summary judgment on the majority of TWG's claims. Specifically, the Defendants seek the dismissal of TWG's claims for breach of the covenant of good faith and fair dealing; tortious interference with business relations, fraud, violations of Chapter 75; civil conspiracy; unjust enrichment; accounting; and piercing the corporate veil. [Docs. 69, 74, 77, 79, 81]. While King Bio does not seek dismissal of the breach of contract claim asserted against it, it argues that it is entitled to summary judgment on the following issues: (1) that King Bio terminated the

SMA effective no later than September 13, 2012 and (2) that the SMA directs that TWG's commissions are to be paid monthly for a period of 18 months following termination of the SMA. [Doc. 69]. The Court heard oral argument on these motions on January 3, 2014.[1]

Having been fully briefed and argued, this matter is now ripe for review.

## II. STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the case." <u>News and Observer Pub. Co. v. Raleigh-Durham Airport Auth.</u>, 597 F.3d 570, 576 (4th Cir. 2010). A "genuine dispute" exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

A party asserting that a fact cannot be genuinely disputed must support its assertion with citations to the record. Fed. R. Civ. P. 56(c)(1).

---

[1] Also pending before the Court is Plaintiff's Motion for Partial Summary Judgment as to Count VII of the Amended Complaint [Doc. 70]. The Court shall address that motion by a separate Order.

"Regardless of whether he may ultimately be responsible for proof and persuasion, the party seeking summary judgment bears an initial burden of demonstrating the absence of a genuine issue of material fact." Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003). If this showing is made, the burden then shifts to the non-moving party who must convince the Court that a triable issue does exist. Id.

In considering the facts for the purposes of a summary judgment motion, the Court must view the pleadings and materials presented in the light most favorable to the nonmoving party and must draw all reasonable inferences in the nonmoving party's favor. Adams v. Trustees of the Univ. of N.C.-Wilmington, 640 F.3d 550, 556 (4th Cir. 2011).

### III. FACTUAL BACKGROUND

#### A. The Parties

TWG is a limited liability corporation organized and existing under the laws of the State of Pennsylvania with its principal place of business in Virginia. TWG is a sales management company that helps launch and manage product lines for consumer product companies through a network of broker representatives in the United States and Canada. Michael Lupacchini ("Lupacchini") is the founder and member of TWG and assumed

4

primary responsibility for the business relationship with King Bio. [Amended Complaint, Doc. 45 at ¶6].

King Bio is a corporation organized and existing under the laws of the State of North Carolina with its principal place of business in Asheville, North Carolina. King Bio is an FDA-registered pharmaceutical manufacturing company engaged in the research, development, and sale of homeopathic medicines. [Id. at ¶7; Answer, Doc. 56 at ¶7]. Defendant Dr. Frank J. King, Jr. ("Dr. King") is the founder and President of King Bio. [Amended Complaint, Doc. 45 at ¶8]. Defendant Suzie R. King ("Mrs. King") is Dr. King's wife and the Vice President of King Bio. [Amended Complaint, Doc. 45 at ¶9; Answer, Doc. 57 at ¶9]. Defendant David Gerhardt ("Gerhardt") is the Vice President of Sales of King Bio. [Amended Complaint, Doc. 45 at ¶10; Answer, Doc. 59 at ¶10]. Defendant Michael N. Whittaker ("Whittaker") is the General Manager of King Bio. [Amended Complaint, Doc. 45 at ¶11; Answer, Doc. 58 at ¶11].

### B. The Sales Management Agreement

The following facts are not in dispute, or if disputed are taken in the light most favorable to the Plaintiff as the non-moving party. On November 22, 2011, King Bio and TWG entered into a Sales Management Agreement

("SMA") regarding the launch and management of King Bio's Food Drug and Mass ("FDM") market business. Specifically, TWG agreed to act as a "national sales manager" for King Bio and develop its FDM business in exchange for a percentage of King Bio's earnings as commission.

TWG spent ten months developing the FDM market by promoting and selling King Bio's products. By mid-July of 2012, however, tensions between the parties were high. King Bio began reviewing the termination provisions of the SMA and assessing its options for ending the relationship. Ultimately, King Bio sent a termination notice to TWG on August 14, 2012, and notified its brokers that TWG would no longer be a contact for King Bio.

The next day, August 15, 2012, King Bio received a letter from TWG's counsel demanding that over $43,000 in commissions be wired to TWG before the close of business on August 17, 2012. In response, King Bio sent TWG a check for commissions in the amount of $248.24, which was the amount King Bio calculated as being due.

After a brief exchange of letters between counsel, TWG filed suit on September 10, 2012. King Bio continued to deny any liability for unpaid commissions until January 2013, when it admitted in interrogatory responses that it was required to pay commissions to TWG under the SMA

6

for a period of 18 months, regardless of whether the termination was with or without cause. In June 2013, when TWG threatened to amend its Complaint further to seek additional penalties under North Carolina General Statute § 66-191, King Bio began to pay a portion of the commissions owed to TWG and continues to make monthly commission payments until this day. As of November 2013, King Bio has paid $252,299.85. TWG contends, however, that these payments are less than the entire amount of commissions owed to TWG and that such payments improperly apply additional set-offs to the commission calculation that directly contravene the terms of the SMA.

## IV. ANALYSIS

### A. Withdrawn Claims

At the summary judgment hearing, TWG advised the Court that it was withdrawing its claims for unjust enrichment, civil conspiracy, and piercing the corporate veil. Accordingly, the Defendants' motions for summary judgment will be granted as to these claims.

### B. Breach of Contract Claim

While King Bio does not seek dismissal of the breach of contract claim asserted against it, it argues that it is entitled to summary judgment

on the following issues: (1) that King Bio terminated the SMA effective no later than September 13, 2012 and (2) that the SMA directs that TWG's commissions are to be paid monthly for a period of 18 months following termination of the SMA. [Doc. 69].

Having reviewed the record, the Court concludes that there are genuine disputes of material fact as to these issues and therefore summary judgment is inappropriate with respect to any aspect of TWG's breach of contract claim against King Bio. Accordingly, King Bio's motion for summary judgment as to these breach of contract issues is denied.

### C. Tortious Interference with Business Relations

In its Amended Complaint, TWG alleges that King Bio and the Individual Defendants interfered in TWG's business relations with FDM retailers and the brokers engaged by TWG to assist in selling King Bio's products to FDM retailers when the Defendants advised the brokers that the SMA would be terminated. [Amended Complaint, Doc. 45 at ¶152].

To maintain an action for tortious interference with business relations under North Carolina law, a plaintiff "must show that [the defendant] acted with malice and for a reason not reasonably related to the protection of a legitimate business interest of [the defendant]." Market America, Inc. v.

Christman-Orth, 135 N.C. App. 143, 158, 520 S.E.2d 570, 581 (1999) (citation and internal quotation marks omitted).

In support of its claim, TWG cites two emails that it claims create a genuine issue of fact as to whether King Bio interfered with TWG's business relations. [See Docs. 86-19, 86-20]. In both emails, King Bio representatives contact retail brokers and ask them to contact King Bio directly regarding future sales. [Id.]. TWG offers no forecast of evidence to suggest that these emails were sent maliciously or for a reason not reasonably related to protection of King Bio's legitimate business interests. Moreover, TWG has failed to present a forecast of evidence that any actual or prospective business relations of TWG were in fact damaged or harmed as result of these emails. For these reasons, TWG's claim for tortious interference with business relations will be dismissed.

**D.     Fraud**

In Count XI of the Verified Amended Complaint, TWG alleges that at the time that TWG and King Bio entered into the SMA, agents of King Bio falsely represented to TWG "that King Bio intended to honor its contractual agreement to engage TWG to serve as King Bio's National Sales Manager and to pay TWG commissions in accordance with the SMA." [Amended

Complaint, Doc. 45 at ¶190]. TWG additionally alleges that King Bio and its agents further made a misrepresentation "regarding Mr. Lupacchini becoming the highest paid employee at King Bio." [Id.]. TWG alleges that in making these representations, "King Bio concealed . . . its true intent . . . to use the contract to induce TWG to use its capabilities . . . to create and develop the lucrative business for King Bio, and to thereafter wrongfully terminate the contract and refuse to continue paying the agreed-upon commissions to TWG." [Id.].

To prove a claim for fraud in North Carolina, a plaintiff must demonstrate: (1) a material misrepresentation of a past or existing fact; (2) that the representation was definite and specific; (3) that it was made "with knowledge of its falsity or in culpable ignorance of its truth"; (4) that the misrepresentation was made with the "intention that it should be acted upon"; (5) that the recipient of the misrepresentation reasonably relied and acted upon the misrepresentation; and (6) that the misrepresentation resulted in damage to the recipient. Horack v. Southern Real Estate Co. of Charlotte, Inc., 150 N.C. App. 305, 313, 563 S.E.2d 47, 53 (2002).

To prevail on its fraud claim, TWG must produce a forecast of evidence that King Bio entered the SMA and made representations

regarding Lupacchini's future earnings with the present intent to deceive. Id. "[A]bsent specific evidence of [the defendant's] intent to deceive during contract formation, 'mere unfilled promises cannot be made the basis for an action of fraud.'" McKinnon v. CV Indus., Inc., 213 N.C. App. 328, 338, 713 S.E.2d 495, 503, disc. rev. denied, 365 N.C. 353, 718 S.E.2d 376 (2011).

Here, TWG argues that the record "is replete with evidence of the Defendants' fraudulent performance under the contract." [Doc. 84 at 19]. TWG fails, however, to point to any specific evidence from which a reasonable jury could conclude that King Bio fraudulently entered the SMA or made representations regarding Lupacchni's earning potential with the present intent to deceive TWG. Further, the forecast of evidence before the Court indicates that King Bio and its agents performed under the SMA for several months prior to its termination. A defendant's partial performance under a contract is evidence of the defendant's intent to fulfill the agreement when formed. See id. at 339, 713 S.E.2d at 504. For these reasons, TWG's fraud claim is dismissed.

**E.     Breach of Good Faith and Fair Dealing**

TWG alleges that King Bio created a false pretext for terminating the SMA and further performed its obligations under the SMA in bad faith, thereby constituting a breach of the covenant of good faith and fair dealing. [Amended Complaint, Doc. 45 at ¶¶ 142, 145].

"In every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement." Governors Club, Inc. v. Governors Club Ltd. P'ship, 152 N.C. App. 240, 251, 567 S.E.2d 781, 789 (2002), aff'd, 357 N.C. 46, 577 S.E.2d 620 (2003) (citation and internal quotations omitted). "North Carolina courts ... do not consider breach of good faith claims independently from breach of contract claims unless there is a special relationship between the parties." Meineke Car Care Centers v. RLB Holdings, LLC, No. 3:08-CV-240-RJC, 2009 WL 2461953, at *11 (W.D.N.C. Aug. 10, 2009), rev'd on other grounds, 423 F. App'x 274 (4th Cir. 2011).

When a claim for breach of the covenant of good faith and fair dealing is "part and parcel" of a similar claim for breach of the express terms of the same contract, it should be dismissed as a freestanding claim and asserted as a theory in support of the claim for breach of contract. See Rezapour v.

Earthlog Equity Grp., Inc., 5:12-CV-105-RLV, 2013 WL 3326026, at *4 (W.D.N.C. July 1, 2013).

In the present case, TWG has not presented a forecast of evidence to suggest that the parties had any sort of special relationship. Further, TWG's good faith and fair dealing claim is "part and parcel" of its claim for breach of the SMA. Accordingly, the Court will dismiss Count IV of the Amended Complaint as a stand-alone claim. TWG may still assert theories of a breach of the duties of good faith and fair dealing in support of its claims for breach of contract.

### F.  Chapter 75

In its Verified Amended Complaint, TWG alleges that King Bio and the Individual Defendants "strategically terminated" the SMA and intentionally interfered in TWG's relations with brokers and retailers, and thereby committed unfair and deceptive trade practices in violation of Chapter 75. [Amended Complaint, Doc. 45 at ¶¶ 157-59].

To make a claim for unfair and deceptive trade practices under Chapter 75, a party must show "(1) an unfair or deceptive act or practice, or an unfair method of competition, (2) in or affecting commerce, (3) which proximately caused actual injury to the plaintiff or to his business." Spartan

Leasing, Inc. v. Pollard, 101 N.C. App. 450, 460–61, 400 S.E.2d 476, 482 (1991). A deceptive practice is one that has "the capacity or tendency to deceive the average consumer, but proof of actual deception is not required." Id. at 461, 400 S. E.2d at 482.

As another Court in this District recently observed:

> A cause of action for unfair and deceptive trade practices under Section 75–1–1 can be a distinct cause of action from [a] breach of contract claim. To do so, however, plaintiff must show substantial aggravating circumstances attending the breach to recover under the Act, which allows for treble damages. It is unlikely that an independent tort could arise in the course of contractual performance, since those sorts of claims are most appropriately addressed by asking simply whether a party adequately fulfilled its contractual obligations.

Patterson v. Flagstar Bank, FSB, 3:12-CV-00707-MOC, 2013 WL 5217616, at *8 (W.D.N.C. Sept. 17, 2013) (internal citations and quotation marks omitted).

Here, TWG has failed to present a forecast of evidence of "substantial aggravating circumstances" attending King Bio's breach of the SMA to sustain its Chapter 75 claim. While TWG claims that it was deceived by King Bio's failure to disclose that it had no intention of honoring the contract, TWG has failed to present a forecast of evidence

14

that King Bio did not intend to honor the SMA *at the time the contract was formed.* Without that, TWG's evidence tends to show nothing more than an intentional breach, which is not a deceptive trade practice. See Bumpers v. Community Bank of N. Va., 747 S.E.2d 220, 226 (N.C. 2013) (noting that Chapter 75 "does not . . . apply to an individual who merely breaches a contract"); Mitchell v. Linville, 148 N.C. App. 71, 74, 557 S.E.2d 620, 623 (2001) ("Neither an intentional breach of contract nor a breach of warranty ... constitutes a violation of Chapter 75.") (citations omitted).

TWG also claims that it was deceived by King Bio's conduct in formulating a plan to terminate the SMA months before it was actually terminated, and continuing to encourage and praise TWG's performance during the interim period. TWG, however, received the notice it was entitled to under the parties' contract. The fact that King Bio may have made preparations in advance of TWG's termination does not render the contractual breach an unfair or deceptive trade practice. See Bartolomeo v. S.B. Thomas, Inc., 889 F.2d 530, 535 (4th Cir. 1989) ("Because [the plaintiff] had all the notice for which he could conceivably have asked . . . the district court properly concluded that this conduct did not violate the Act."); see also United Roasters, Inc. v. Colgate-Palmolive Co., 649 F.2d

985, 989-90 (4th Cir. 1981) (affirming dismissal of Chapter 75 claim, noting party possessing a right of termination is not required to inform the other party promptly of any decision to exercise that right).

Further, while TWG complains that King Bio deceptively communicated with certain brokers prior to terminating the SMA to let them know that TWG would soon be terminated, such communications will not support a Chapter 75 claim. See Pennsylvania Floor Coverings, Inc. v. Perstorp Flooring Inc., 5:98-CV-705-BR(2), 1999 WL 1939994, at *1-2 (E.D.N.C. Mar. 2, 1999) (Denson, M.J.) (declining to conclude that "secret discussions with another potential distributor" constituted aggravating circumstances, finding instead that such actions "amount to nothing more than a breach of contract.").

Finally, while TWG asserts that King Bio violated Chapter 75 by "manufacturing a pretextual cause" for terminating the SMA and attempting to force TWG to abandon the relationship itself, TWG has failed to show that it suffered any damage as a result of such a scheme, as King Bio was unsuccessful in its bid to force TWG into terminating the contract. Moreover, King Bio is paying commissions to TWG as required by the SMA.

Having failed to present a forecast of evidence to establish substantial aggravating circumstances attending King Bio's breach of contract, TWG's Chapter 75 claim will also be dismissed.

G. **Punitive Damages**

Because none of TWG's tort claims survive summary judgment, TWG's claim for punitive damages is also dismissed.[2]

**O R D E R**

Accordingly, **IT IS, THEREFORE, ORDERED** that:

(1) Defendant King Bio, Inc.'s Motion for Partial Summary Judgment [Doc. 69] is **GRANTED** with respect to Plaintiff's claims for unjust enrichment (Count III), breach of good faith and fair dealing (Count IV), tortious interference with business relations (Count V), violations of Chapter 75 (Count VI), punitive damages (Count VIII), civil conspiracy (Count IX), fraud (Count XI), piercing the corporate veil (Count XII), and In all other respects, King Bio's Motion for Summary Judgment is **DENIED**;

(2) Defendant Dr. Frank J. King, Jr.'s Motion for Summary judgment [Doc. 74] is **GRANTED**, and all of Plaintiff's claims pending against this Defendant are hereby **DISMISSED**;

---

[2] Because all of TWG's tort claims have been dismissed on their merits, the Court need not address whether the economic loss rule and/or the independent tort doctrine bars such claims.

(3) Defendant Suzie R. King's Motion for Summary Judgment [Doc. 77] is **GRANTED**, and all of Plaintiff's claims pending against this Defendant are hereby **DISMISSED**;

(4) Defendant David Gerhardt's Motion for Summary Judgment [Doc. 79] is **GRANTED**, and all of Plaintiff's claims pending against this Defendant are hereby **DISMISSED**; and

(5) Defendant Michael N. Whittaker's Motion for Summary Judgment [Doc. 81] is **GRANTED**, and all of Plaintiff's claims pending against this Defendant are hereby **DISMISSED**.

**IT IS SO ORDERED.**

Signed: April 24, 2014

Martin Reidinger
United States District Judge