**THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**
**CIVIL CASE NO. 1:12-cv-00281-MR-DLH**


| | |
|---|---|
| **THE WELLNESS GROUP, LLC,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **MEMORANDUM OF** |
| **vs.** ) | **DECISION AND ORDER** |
| ) | |
| **KING BIO, INC., DR. FRANK J.** ) | |
| **KING, JR., SUZIE R. KING, DAVID** ) | |
| **GERHARDT, and MICHAEL D.** ) | |
| **WHITTAKER,** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |


**THIS MATTER** is before the Court on the Plaintiff's Motion for Partial

Summary Judgment as to Count VII of the Amended Complaint [Doc. 70].

## I.    PROCEDURAL BACKGROUND

The Plaintiff The Wellness Group, LLC ("TWG") initiated this action

on September 10, 2012 against the Defendant King Bio, Inc. ("King Bio")

and its corporate officers for claims arising out of the alleged breach of the

parties' Sales Management Agreement (SMA).  In addition to its claims

relating to the breach of the SMA, TWG seeks a declaratory judgment that

the non-compete provision of the Non-Competition and Non-Disclosure

Agreement entered into between TWG's principal Michael Lupacchini ("Lupacchini") and King Bio on February 23, 2012 is invalid and unenforceable because it lacks consideration and also because it is overly broad.  [Doc. 45].

TWG now seeks summary judgment on this declaratory judgment claim.  [Doc. 70].  King Bio opposes the motion, arguing *inter alia* that no actual controversy exists to support a claim under the Declaratory Judgment Act.  King Bio further argues that the Agreement is supported by consideration and that it includes reasonable restrictions necessary to protect King Bio's legitimate business interests.  [Doc. 94].

Having been fully briefed and argued, this matter is now ripe for review.

## II.    STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the case."   News and Observer Pub. Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010).   A "genuine dispute" exists "if the evidence is such that a reasonable jury

could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

A party asserting that a fact cannot be genuinely disputed must support its assertion with citations to the record. Fed. R. Civ. P. 56(c)(1). "Regardless of whether he may ultimately be responsible for proof and persuasion, the party seeking summary judgment bears an initial burden of demonstrating the absence of a genuine issue of material fact." <u>Bouchat v. Baltimore Ravens Football Club, Inc.</u>, 346 F.3d 514, 522 (4th Cir. 2003). If this showing is made, the burden then shifts to the non-moving party who must convince the Court that a triable issue does exist. <u>Id.</u>

In considering the facts for the purposes of a summary judgment motion, the Court must view the pleadings and materials presented in the light most favorable to the nonmoving party and must draw all reasonable inferences in the nonmoving party's favor. <u>Adams v. Trustees of the Univ. of N.C.-Wilmington</u>, 640 F.3d 550, 556 (4th Cir. 2011).

## III.    FACTUAL BACKGROUND

TWG is a limited liability corporation organized and existing under the laws of the State of Pennsylvania with its principal place of business in Virginia. TWG is a sales management company that helps launch and manage product lines for consumer product companies through a network

of broker representatives in the United States and Canada. Lupacchini is the founder and member of TWG and assumed primary responsibility for the business relationship with King Bio. [Amended Complaint, Doc. 45 at ¶ 6].

King Bio is a corporation organized and existing under the laws of the State of North Carolina with its principal place of business in Asheville, North Carolina. King Bio is an FDA-registered pharmaceutical manufacturing company engaged in the research, development, and sale of homeopathic medicines. [Id. at ¶ 7; Answer, Doc. 56 at ¶ 7].

On November 22, 2011, King Bio and TWG entered into a Sales Management Agreement ("SMA") regarding the launch and management of King Bio's Food Drug and Mass market ("FDM") business. Specifically, TWG agreed to act as a "national sales manager" for King Bio and develop its FDM business in exchange for a percentage of King Bio's earnings as commission.[1]

Upon entering the SMA, King Bio and TWG decided to market King Bio's asthma product to FDM retailers under King Bio's SafeCare brand

---

[1] The SMA includes a non-competition clause, which provides that TWG will not compete, directly or indirectly, with King Bio by selling or brokering competing category products for a period of 18 months following termination of the SMA. [Doc. 45-1 at 5 ¶ 8]. The scope and enforceability of this provision has not been challenged in this litigation.

name, using the product name AsthmaCare®. [Declaration of Frank King ("F. King Decl."), Doc. 95 at ¶ 3]. By late December 2011 or early January 2012, King Bio and TWG began developing the packaging and written materials needed to launch the AsthmaCare® product at the February 2012 FDM trade show known as ECRM. [Id. at ¶ 4].

In February 2012, King Bio initiated the process of filing a trademark application for the product name AsthmaCare®. [Id. at ¶ 6]. At that time, King Bio discovered that a competitor was also attempting to register ownership of the AsthmaCare® trademark. [Id.]. Lupacchini had a history of business dealings with this competitor, thus making its attempt to register the AsthmaCare® name of particular concern to King Bio. [Id. at ¶ 7]. Specifically, Lupacchini had worked with the competitor during the spring and summer of 2011, immediately prior to the formation of TWG. [Id.]. Acting on behalf of this competitor, Lupacchini had consulted extensively with King Bio on the development of a group of homeopathic products, including an asthma product. [Id.; Deposition of Michael Lupacchini ("Lupacchini Dep."), Doc. 94-3 at 94-101]. Lupacchini pitched an arrangement under which King Bio would manufacture the products to be resold by this competitor; this deal, however, was never consummated. [F. King Decl., Doc. 95 at ¶ 7].

When King Bio learned that this competitor claimed trademark ownership of a product name that King Bio had recently developed with Lupacchini's knowledge, King Bio became concerned about whether its proprietary information was properly protected in the relationship with TWG. [Id. at ¶ 8].

Accordingly, on February 23, 2012, King Bio presented Lupacchini with a Non-Competition and Non-Disclosure Agreement ("Agreement"). Lupacchini signed the Agreement while attending a planning meeting at King Bio's Asheville offices. [F. King Decl., Doc. 94-1 at ¶ 5; Lupacchini Dep., Doc. 94-3 at 275].

The Agreement recites the following:

> 1. KING BIO PHARMACEUTICALS, INC. is engaged in the business of Homeopathic consultation, sales, and services.
>
> 2. Michael J. Lupacchini, The Wellness Group, LLC desires to enter into a contract with KING BIO.
>
> 3. Because KING BIO will have to disclose to Michael J. Lupacchini certain of KING BIO's confidential information, as a condition to KING BIO's agreement to enter into a contract with Michael J. Lupacchini and to expose Michael J. Lupacchini to its confidential information, KING BIO requires that Michael J. Lupacchini enter into an agreement not to compete with KING BIO under certain

> circumstances and not to disclose or use KING BIO's confidential information except in furtherance of KING BIO's business.
>
> NOW THEREFORE, in consideration of the premises and other valuable consideration the sufficiency of which is hereby acknowledged, the parties agree as follows . . . .

[Doc. 45-2 at 2]. The Agreement goes on to provide two primary restrictions on the activities of Lupacchini and/or TWG[2]: (1) a non-competition agreement restricting Lupacchini's business activities for a period of three years following termination of the SMA ("the Non-Competition Provision"); and (2) a non-disclosure agreement prohibiting Lupacchini from using or disclosing King Bio's confidential information or trade secrets following termination of the SMA ("the Non-Disclosure Provision").

TWG does not challenge the enforceability of the Non-Disclosure Provision. The Agreement contains a severability clause, which provides that in the event that any provision of the Agreement should be declared

---

[2] TWG characterizes this Agreement as one entered into between King Bio and TWG, and it makes no argument regarding the enforceability of the Agreement as to Lupacchini individually. The Agreement recites that it is being entered between King Bio Pharamceuticals, Inc. and "independent contractor, Michael J. Lupacchini, The Wellness Group, LLC ('Michael J. Lupacchini')." [Doc. 45-2 at 2]. Notably, however, the Agreement is signed by Lupacchini only in his individual capacity, with no reference to his capacity to sign on behalf of TWG.

invalid or unenforceable, such provision shall be deemed removed and the remaining provisions shall continue in full force and effect. [Doc. 45-2 at 4 ¶10]. Accordingly, the Non-Disclosure Provision of the Agreement remains unaffected by the Court's decision regarding the validity and/or enforceability of the Non-Competition Provision.

The Non-Competition Provision restricts Lupacchini from the following activities:

> (1) render[ing] any services to or solicit any business
> from any person, firm, client, customer, or corporation with whom or for whom KING BIO has done business or provided services during Michael J.
> Lupacchini's period of contract with KING BIO; and
>
> (2) engag[ing] in any business, either alone, with another, or on behalf of another, or provide consulting services or other advice to any person that
> competes with KING BIO in any line of business engaged in by KING BIO.

[Doc. 45-2 at 2].

In August 2012, King Bio sent a notice to TWG, terminating the SMA. This termination letter states: "Enclosed is a copy of the signed Non-Competition and Non-Disclosure Agreement signed February 23, 2012,

which we will you bound for the duration of the term." [Doc. 70-5 at 3]. This action followed.

## IV.  DISCUSSION

### A.  Actual Controversy

At the outset, King Bio argues that no actual controversy exists to support a claim under the Declaratory Judgment Act.  Specifically, King Bio argues that TWG has taken no action that would result in any damages to King Bio under the Agreement that might be assessed against TWG, nor has King Bio itself taken any action to enforce the Agreement.  As such, King Bio contends that any purported controversy is speculative and hypothetical, and this declaratory judgment action must be dismissed.

Under the Declaratory Judgment Act, a federal court "may declare the rights and other legal relations of any interested party[3] seeking such declaration" when there is an "actual controversy."  28 U.S.C. § 2201(a).  In order to satisfy the requirement of an actual controversy, the dispute must

---

[3] The parties have not addressed TWG's standing to seek a declaratory judgment regarding the enforceability of the Agreement, apparently because both sides view TWG as a party to the contract.  As previously noted, however, it does not appear that TWG is actually a signatory to this Agreement: Lupacchini signed only in his individual capacity and not on behalf of TWG as its principal and/or member.  In light of Lupacchini's close connections with TWG, however, it appears to the Court that the parties concede that TWG is a proper "interested party" within the meaning of the Declaratory Judgment Act.

"be definite and concrete, touching the legal relations of parties having adverse legal interests."  Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240-41 (1937).  The dispute must also be "a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."  Id. at 241.  In other words, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007) (citation and footnote omitted).

In its August 2012 letter terminating the SMA, King Bio made clear to TWG that it intended to hold Lupacchini "bound" to the Non-Competition Provision of the Agreement.  King Bio contends that this communication is insufficient, without more, to create an actual controversy.  [Doc. 94 at 6].  In support of this argument, King Bio cites InVue Security Products, Inc. v. Merchandising Technologies, Inc., No. 3:12-cv-88-RJC-DSC, 2012 WL 2577452, at *3 (W.D.N.C. July 3, 2012).  InVue, however, is distinguishable from the present case.   In InVue, a patentee sent a letter to a party identifying the patentee's patent and requesting information about the other

party's product line.  The Court held that this letter did not evidence a stated position regarding potential infringement and therefore did not indicate a substantial controversy between the parties.  Id. ("The plain language of the letter does not identify any activity or product as infringing any patent.  Instead, the letter appears to function as a proffer of and request for information.  Consequently, it does not establish an adverse legal position.  This type of non-litigious communication alone is insufficient to establish a case of actual controversy.").  By contrast, in the present case, the August 2012 termination letter clearly indicated King Bio's intent to enforce the Agreement.  Under the circumstances, King Bio's stated intent to enforce its rights under the Agreement could reasonably be construed as an intent to bring litigation against Lupacchini, TWG, or both. The Fourth Circuit has recognized that threats of future litigation are sufficient to give rise to an actual controversy for the purpose of a declaratory judgment claim.  See Volvo Constr. Equip. N.A., Inc. v. CLM Equip. Co., 386 F.3d 581, 593 n.12 (4th Cir. 2004) (citing GTE Directories Pub. Corp. v. Trimen Am., Inc., 67 F.3d 1563 (11th Cir. 1995)).

In the event of a breach of the Agreement, Lupacchini/TWG could be liable to King Bio for $100,000 in liquidated damages.  [See Doc. 45-2 at 3 ¶ 7].  The fact that Lupacchini/TWG has refrained from engaging in any

conduct which could violate the terms of the Agreement and subject Lupacchini/TWG to such a penalty does not minimize the nature of the controversy between the parties. As the Supreme Court has noted, the "actual controversy" requirement does not require a plaintiff to "destroy a large building, bet the farm, or . . . risk treble damages and the loss of . . . its business before seeking a declaration of its actively contested legal rights." <u>MedImmune,</u> 549 U.S. at 134.

For these reasons, the Court concludes that the parties have presented a justiciable controversy to the Court.

### B. Lack of Consideration

Under North Carolina law, a covenant not to compete is enforceable if it is "(1) in writing; (2) entered into at the time and as part of the contract of employment; (3) based on valuable consideration; (4) reasonable both as to time and territory embraced in the restrictions; (5) fair to the parties; and (6) not against public policy." <u>Starkings Court Reporting Servs., Inc. v. Collins</u>, 67 N.C. App. 540, 541, 313 S.E.2d 614, 615 (1984) (analyzing covenant not to compete imposed upon independent contractor).

An offer of employment may serve as adequate consideration for a non-competition covenant where the agreement is entered into at the commencement of the employment relationship. <u>Reynolds and Reynolds</u>

Co. v. Tart, 955 F.Supp. 547, 553 (W.D.N.C. 1997); Amerigas Propane, LP v. Coffey, No. 13 CVS 11778, 2014 WL 580174, at *3 (N.C. Super. Ct. Feb. 11, 2014). If the employment relationship has already commenced when the non-competition covenant is entered into, some kind of new material consideration is required. Reynolds and Reynolds Co., 955 F.Supp. at 553; Forrest Paschal Machinery Co. v. Milholen, 27 N.C. App. 678, 686-87, 220 S.E.2d 190, 196 (1975).

Here, it is undisputed that TWG and Lupacchini received no financial consideration for executing the Agreement. [Suzie King Deposition ("S. King Dep."), Doc. 70-8 at 342]. The Agreement itself cites King Bio's "agreement to enter into a contract with Michael J. Lupacchini and to expose Michael J. Lupacchini to its confidential information" as consideration for the non-competition provision. [Doc. 45-2 at ¶ 3]. Both of these events, however, had already occurred. King Bio had already "exposed" Lupacchini to its confidential information; indeed, it was King Bio's concern that this shared confidential information had been disclosed to a competitor which led to King Bio demanding Lupacchini sign the Agreement in the first place. [See F. King Decl., Doc. 95 at ¶ 8]. As for King Bio's agreement to enter "a contract" with Lupacchini, such reference can only be to the Sales Management Agreement, as it is the only

13

contractual agreement ever executed by the parties.  The SMA, however, had been executed months earlier.  "Past consideration . . . is not adequate consideration to support a contract."  <u>Estate of Graham v. Morrison</u>, 168 N.C. App. 63, 70, 607 S.E.2d 295, 300 (2005).  Thus, the execution of the SMA cannot serve as consideration for this new agreement.

King Bio urges the Court to construe this provision as King Bio agreeing to the *continuation* of the SMA in exchange for the non-compete agreement.  [<u>See</u> King Bio's Response, Doc. 94 at 7 ("The Agreement states that it is required as a condition of King Bio entering into – *and by extension, continuing under* – a contract with TWG….") (emphasis added)].  This construction, however, is not supported by the plain language of the Agreement.   In any event, the mere continuation of the parties' arrangement was simply not sufficient to support consideration for this new restrictive covenant.  <u>See</u> <u>Forrest Paschal Machinery Co.</u>, 27 N.C. App. at 686-87, 220 S.E.2d at 196 ("[W]hen the relationship of employer and employee is already established without a restrictive covenant, any agreement thereafter not to compete must be in the nature of a new contract based upon a new consideration.").[4]

---

[4]  While acknowledging that North Carolina courts require new or additional consideration to support a non-compete covenant entered after an employment

For the foregoing reasons, the Court concludes upon the undisputed forecast of evidence that there was no consideration to support the non-competition provision of the Non-Competition and Non-Disclosure Agreement signed February 23, 2012. Accordingly, the Court will grant summary judgment in favor of the Plaintiff on Count VII of the Amended Complaint.

## O R D E R

Accordingly, **IT IS, THEREFORE, ORDERED** that Plaintiff's Motion for Partial Summary Judgment [Doc. 70] is **GRANTED**, and it is hereby **DECLARED** that the Non-Competition Provision of the parties' Non-Competition and Non-Disclosure Agreement signed February 23, 2012 is invalid and unenforceable.

Signed: April 30, 2014

**IT IS SO ORDERED.**

Martin Reidinger
United States District Judge

---

relationship is already established, King Bio argues that this rule is inapplicable here because TWG was an independent contractor of King Bio, not an employee. King Bio's reasoning, however, is not persuasive. See Superior Performers, Inc. v. Meaike, No. 1:13CV1149, 2014 WL 1412434 (M.D.N.C. Apr. 11, 2014) (requiring new consideration for non-compete agreements executed after defendants, who were independent contractors, began their contractual relationship with the plaintiff).